# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-41217

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

February 3, 2014

Lyle W. Cayce
Clerk

Plaintiff-Appellee

v.

JUAN LUIS RAMIREZ; ALEJANDRO CABRERA; JORGE SALAS-LEYVA,
also known as Jorge Sala

Defendants-Appellants

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 4:10-CR-140-3

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

Juan Luis Ramirez, Alejandro Cabrera, and Jorge Salas-Leyva appeal their convictions for drug and money laundering conspiracy. Ramirez and Salas-Leyva also challenge their sentences. The Government concedes error on the sufficiency of the evidence for the money laundering conspiracy as to Cabrera. We agree and find no other error. We therefore AFFIRM the convictions for the drug conspiracy as to all defendants and the money

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-41217

laundering conspiracy as to Ramirez and Salas-Leyva, but we REVERSE Cabrera's conviction for money laundering conspiracy and REMAND for resentencing.

I.

Cabrera argues first that his prosecution in the instant case violated his plea agreement with the Government in a prior case. "Whether the Government has breached a plea agreement is a question of law we review de novo." *United States v. Harper*, 643 F.3d 135, 139 (5th Cir. 2011).

In the prior case, Cabrera pleaded guilty to an indictment charging him with conspiracy to distribute methamphetamine. In return for the plea, the Government agreed not to prosecute Cabrera in the Eastern District of Texas for other charges based on conduct underlying the plea. The instant prosecution was not a breach of the agreement because, although one of the co-defendants overlapped in the two cases, the conduct underlying the two offenses was not the same. In the methamphetamine case, Cabrera was charged with a conspiracy lasting from 2007 through July 23, 2009, to distribute 500 grams or more of a mixture or substance containing methamphetamine, and that as part of the offense Cabrera possessed one pound of methamphetamine on July 23, 2009. The factual basis for the offense showed that Cabrera and another defendant intended for a third individual to sell the methamphetamine in Longview or Shreveport. In the instant case, Cabrera was charged with a much larger conspiracy lasting from January 2006 through July 13, 2011, to distribute five kilograms or more of cocaine, and with conspiracy to commit money laundering, in the Eastern District of Texas. Given the different time frames, co-defendants, controlled substances, and general locations of the two offenses, it would not be reasonable for Cabrera to believe that his plea agreement in the methamphetamine case barred his prosecution for the instant cocaine offense. *See, e.g., United States v. Lewis*,

2

No. 12-41217

476 F.3d 369, 387-88 (5th Cir. 2007) (an alleged breach of a plea agreement is determined in part based on defendant's reasonable understanding of the agreement). Furthermore, there was no double jeopardy violation in light of the different elements to be proven in each case. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).

## II.

All three defendants argue that venue was improper in the Eastern District of Texas. They assert that the evidence at trial showed that the drug operations and activity were in Dallas, that all co-conspirators lived in Dallas, and that stash houses were located in Dallas. They contend that the evidence failed to show that the offenses occurred in the Eastern District of Texas. We disagree.

We will affirm a conviction where the defendant challenges venue if, viewing the evidence in the light most favorable to the Government, a rational jury could find that the Government established venue by a preponderance of the evidence. *United States v. Garcia Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009). In a conspiracy case, venue is proper in any district where the agreement was formed or an overt act occurred. *Id.*

Here, although many acts in the conspiracies occurred in Dallas, which is in the Northern District of Texas, there was also evidence of significant acts occurring within the Eastern District of Texas, especially in and around Lufkin. The evidence showed that two individuals involved in the conspiracy, Melesio Noyola and Jonathan Beltran, lived in Lufkin, where multiple-kilogram shipments of cocaine were delivered. Some of the cocaine was then further distributed to Louisiana. Money was also delivered to and sent from Lufkin. These acts were all in furtherance of the conspiracies and supported venue in the Eastern District of Texas. *See id.* ("Venue can be based on evidence of any single act that initiated, perpetuated, or completed the

3

No. 12-41217

crime."); *see also* 18 U.S.C. § 3237(a).  The evidence also supported a conclusion that Ramirez and others traveled through the Eastern District of Texas in furtherance of the conspiracy as they distributed cocaine and transported drug proceeds.  *See Garcia Mendoza*, 587 F.3d at 687 (regularly transporting contraband through a district "would support venue, for one co-conspirator's travel through a judicial district in furtherance of the crime alleged establishes venue as to all co-conspirators").

III.

All defendants also challenge the sufficiency of the evidence to support their convictions.  Because all three defendants timely moved for a judgment of acquittal, we review the challenge to the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the Government, and asking whether any rational jury could have found all of the essential elements of the offense beyond a reasonable doubt.  *United States v. Davis*, 735 F.3d 194, 198 (5th Cir. 2013).

In order to convict the defendants of the conspiracy to distribute cocaine, the Government had to prove "(1) an agreement between two or more persons to violate the narcotics laws, (2) the defendant's knowledge of the agreement, and (3) the defendant's voluntary participation in the conspiracy."  *United States v. Zamora*, 661 F.3d 200, 209 (5th Cir. 2011) (internal quotation marks and citation omitted).  The Government also had to prove that the overall scope of the conspiracy involved at least five kilograms of cocaine.  *See United States v. Turner*, 319 F.3d 716, 721-22 (5th Cir. 2003).

The evidence here showed that the defendants were part of a wide-ranging operation involving the Gulf cartel moving large amounts of cocaine and money between Mexico and the United States.  The operation was headed in Mexico by Salas-Leyva's cousin, who was known as El Tigre, and involved

numerous drivers, middlemen, and other participants. The evidence incriminated all three defendants in the conspiracy.

Trial testimony showed that a co-conspirator named Gumercindo Chavarria delivered multiple shipments of cocaine in quantities of seven to eight kilograms to Ramirez. Ramirez also made introductions allowing Noyola and Beltran to sell cocaine to a person named Peter Mingo. Ramirez himself also delivered cocaine to Mingo for resale in Louisiana. Noyola, Beltran, Mingo, and Chavarria all testified to transactions implicating Ramirez.

With respect to Cabrera, co-conspirators Jesus Jaimes and Jorge Villegas-Jaimes (Villegas) both testified about deliveries of cocaine to Cabrera and to Cabrera's partner, Jose Gaona. Jaimes testified that he delivered approximately 120 kilograms of cocaine to both men and that approximately 50 kilograms went directly to Cabrera at Cabrera's home. Villegas believed that Cabrera received approximately 70 kilograms. Cabrera argues that the evidence was insufficient because Jaimes and Villegas were criminals and not credible. A conviction may be based even on uncorroborated testimony of a co-conspirator, however, as long as the testimony is not incredible as a matter of law. *See United States v. Valdez,* 453 F.3d 252, 257 (5th Cir. 2006). Because Jaimes's and Villegas's testimony did not relate to facts that the witnesses could not have observed or to events which could not possibly have happened, the testimony was not incredible as a matter of law and the evidence was sufficient. *See id.*

The evidence was also sufficient to support the conviction of Salas-Leyva. Contrary to the defendant's argument, testimony from Fred Gutierrez showed that Gutierrez purchased cocaine directly from Salas-Leyva on several occasions and that on multiple occasions he obtained cocaine from Salas-Leyva's brothers, who worked for Salas-Leyva. Another co-conspirator, Abraham Barragan-Serrato, testified that at least ten shipments of 30

No. 12-41217

kilograms of cocaine were sent from Mexico through McAllen to Salas-Leyva. Furthermore, Chavarria testified that beginning in February 2009, he delivered seven to eight kilograms of cocaine to Salas-Leyva on two or three occasions. Jesus Davila also testified that he purchased cocaine from El Tigre and that in 2007 El Tigre sent him to Salas-Leyva, after which Salas-Leyva delivered cocaine to Davila and collected the proceeds of Davila's cocaine sales. Based on the above, we conclude that the evidence was more than sufficient to show that the defendants knew about the conspiracy and intentionally joined in the agreement to distribute five kilograms or more of cocaine.

In order to convict the defendants of money laundering, the Government had to prove "(1) that there was an agreement between two or more persons to commit money laundering; and (2) that the defendant[s] joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Threadgill*, 172 F.3d 357, 366 (5th Cir. 1999). Proof of an overt act is not required. *United States v. Fuchs*, 467 F.3d 889, 906 (5th Cir. 2006). The indictment here alleged four objects of the conspiracy involving the promotion of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (a)(2)(A), and the concealment of the proceeds of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (a)(2)(B)(i). We will affirm the convictions if the evidence was sufficient as to one of the objects. *Fuchs*, 467 F.3d at 906.

The defendants contend that the evidence was insufficient because it showed merely that money was transported hidden in vehicles as part of the drug offense, without the use of wires, financial institutions, or financial transactions. They argue that the money was payment for past drug shipments and that their conduct involved merely concealing the money itself during transportation rather than transporting money to conceal the nature, location, source, ownership, or control of the funds. *See, e.g., Cuellar v. United States*, 553 U.S. 550, 568, 128 S. Ct. 1994, 2006 (2008); *see also*

No. 12-41217

§ 1956(a)(2)(B)(i).  The Government contends that, at the least, the evidence was sufficient to prove promotion money laundering.  We agree.

The sufficiency of the evidence with respect to promotion money laundering is necessarily a fact-intensive inquiry, dependent on the circumstances of each case.  *See United States v. Trejo*, 610 F.3d 308, 315 (5th Cir. 2010).  To prove a conviction for money laundering under § 1956(a)(1)(A), the government must prove that "(1) the financial transaction in question involves the proceeds of unlawful activity, (2) the defendant had knowledge that the property involved in the financial transaction represented proceeds of an unlawful activity, and (3) the financial transaction was conducted with the intent to promote the carrying on of a specified unlawful activity."  *United States v. Valuck*, 286 F.3d 221, 225 (5th Cir. 2002).

The evidence and circumstances here showed that Ramirez personally participated in the transportation of multiple shipments of both cocaine and money concealed in vehicles.  Ramirez was directly compensated for the transportation.  On more than one occasion, he turned the money over to another co-conspirator for further transportation into Mexico.  Ramirez further directed other participants, such as Noyola and Beltran, on where to deliver cocaine.  The evidence showed that Salas-Leyva similarly received and delivered numerous shipments of cocaine.  On multiple occasions Salas-Leyva collected money on behalf of El Tigre and delivered the funds to other co-conspirators for transportation.  Salas-Leyva regularly handled funds in excess of a quarter million dollars, and at one point he gave Noyola $180,000 to transport to El Tigre.  Ramirez and Salas-Leyva were clearly involved in multiple financial transactions when they delivered drug proceeds to others.  *See United States v. Garcia Abrego*, 141 F.3d 142, 161 (5th Cir. 1998) (transferring over $100,000 to the care or possession of another was a transaction for purposes of establishing a money laundering offense).

No. 12-41217

To show that the defendants had the specific intent to promote unlawful activity, the Government had to show more than the defendants' knowing promotion, but rather that the defendants acted intentionally to promote the unlawful activity. *See Trejo*, 610 F.3d at 314. Here, the evidence did more than show that funds were frequently transported in a manner designed to prevent detection while en route to Mexico, which undoubtedly promoted the conspiracy. More than that, the evidence of Ramirez's and Salas-Leyva's extensive participation in the drug operation, and their leadership roles in the activity by directing others, supports a conclusion that both knew the funds were drug proceeds, knew they were being transported out of the United States, and intended the transactions to further the progress of the unlawful drug conspiracy. *See, e.g., id.* at 315 (defendant's knowledge of inner workings of drug organization or extensive involvement in the operation may be sufficient to show intent to promote unlawful purpose of money laundering). We are satisfied based on the circumstances here that the Government proved the essential elements of money laundering with respect to Ramirez and Salas-Leyva.

The Government concedes on appeal that the evidence was insufficient to show that Cabrera joined an agreement to commit money laundering knowing the purpose of the agreement and with intent to further that purpose. Cabrera's conviction on the money laundering count is therefore reversed and the case is remanded for the district court to resentence Cabrera.

IV.

Ramirez and Salas-Leyva both challenge sentencing enhancements applied when determining their sentencing ranges under the Sentencing Guidelines. "We review a district court's interpretation and application of the sentencing guidelines *de novo* and its findings of fact for clear error." *United States v. Reagan*, 725 F.3d 471, 493 (5th Cir. 2013).

8

No. 12-41217

A.

Ramirez contends that the district court erred by overruling six objections to the presentence report (PSR).  He does not specify in his brief how the court erred in its analysis, however.  An appellant may not incorporate by reference arguments made in his district court pleadings, and conclusional and inadequately briefed arguments are waived.  *See, e.g., Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993).  Moreover, we discern no clear error in the district court's determinations based on the drug quantity attributed to Ramirez or Ramirez's role in the offense.

Ramirez also argues for the first time on appeal that the district court erred when determining his offense level for money laundering by applying Chapter 3 enhancements along with the cross-reference of § 2S1.1.  The Government concedes that the court's determination of the money laundering offense level was erroneous but argues that the error was harmless and did not affect Ramirez's substantial rights.  We agree.

The district court used the *adjusted* offense level for the drug conspiracy (which included Chapter 3 enhancements) as the *base* offense level for money laundering and then added two levels pursuant to § 2S1.1(b)(2)(B) to arrive at a total offense level of 42.  This offense level, along with Ramirez's criminal history category of III, yielded an advisory guideline range of 360 months to life.  Under the grouping rules, this was Ramirez's guideline range because the money laundering offense level was higher than the offense level for the drug offense.  *See* U.S.S.G. § 3D1.1.

However, the base offense level for money laundering should have been determined from the drug quantity alone without considering any Chapter 3 enhancements applicable to the drug offense.  *See* U.S.S.G. § 2S1.1, cmt. 2(C).  That procedure would have yielded a total offense level for money laundering of 38.  Nevertheless, Ramirez's guideline range would not have changed

No. 12-41217

because his total offense level for the drug conspiracy was 40, which yielded the same range of 360 moths to life under the guidelines' grouping rules. *See* U.S.S.G. § 3D1.1 & Sentencing Table. Therefore, Ramirez cannot show a reasonable probability that he would have received a lesser sentence. *See, e.g., United States v. Lopez*, 923 F.2d 47, 51 (5th Cir. 1991) ("[W]here the sentence imposed falls within a guideline range that remains unaffected regardless of the merits of the appeal, no substantial rights of the defendant are implicated.").

### B.

With respect to Salas-Leyva, the jury specifically found that the drug conspiracy involved "5 kilograms or more" of cocaine. This finding exposed Salas-Leyva to a statutory maximum sentence of not less than ten years or more than life. *See* 21 U.S.C. § 841(b)(1)(A). The district court then determined for guidelines purposes that Salas-Leyva was responsible for at least 150 kilograms. Salas-Leyva argues that this finding was erroneous because the court relied on evidence of drug quantities from a different and unrelated conspiracy. Salas-Leyva is incorrect. Numerous witnesses, including Chavarria, Noyola, Robles, Fernandez-Olver, Gutierrez, and Barragan-Serrato, testified about Salas-Leyva's involvement with a voluminous amount of cocaine and large amounts of money. Gutierrez and Barragan-Serrato both testified that Salas-Leyva handled approximately 300 to 400 kilograms of cocaine. The context of the testimony shows that the witnesses were discussing the instant conspiracy. The district court discussed all of the above witnesses at sentencing. The court's drug quantity determination was not implausible in light of the record as a whole, and the court did not clearly err in its determination. *See United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005).

10

No. 12-41217

Salas-Leyva also argues that the district court improperly applied a four-level enhancement to the drug offense for a leadership role pursuant to U.S.S.G. § 3B1.1(a) because the evidence showed only that he was involved in selling cocaine without any managerial role.  The district court specifically found, and the evidence showed, however, that Salas-Leyva occupied a high-level position within El Tigre's drug organization.  He received well over 300 kilograms of cocaine for further distribution and delivered six-figure cash amounts to others to take back to Mexico.  The evidence also showed that he recruited other participants and directed their activity because *inter alia* he instructed his brothers to deliver cocaine to other co-conspirators.  The district court's conclusion that Salas-Leyva recruited accomplices and exercised control was plausible in light of the evidence as a whole, and the enhancement was not clearly erroneous.  *See United States v. Brown*, 727 F.3d 329, 341 (5th Cir. 2013).

Like Ramirez, Salas-Leyva argues, also for the first time on appeal, that the district court misapplied the cross-reference in § 2S1.1 by including Chapter 3 enhancements for the drug offense as part of the offense level for the money laundering conspiracy, specifically the leadership role.  *See* § 2S1.1, cmt. 2(C).  Because this argument was not raised in the district court, our review is limited to plain error.  *See United States v. Whitelaw*, 580 F.3d 256, 259 (5th Cir. 2009).  We disagree with the defendant that the district court misapplied the enhancement.  Unlike the determination for Ramirez, the district court here did not apply the adjusted offense level for the drug offense as the base offense level for the money laundering offense.  Instead, the PSR shows that the base offense level for money laundering was determined solely from the underlying drug quantity before the leadership role enhancement was applied, as contemplated by § 2S1.1, cmt. 2(C). The PSR then notes that the leadership enhancement applied because Salas-Leyva was in charge of the operation in

11

the Dallas area and had subordinates working for him. The trial evidence supported the enhancement because several witnesses, including Chavarria, Noyola, and Cruz, testified that they delivered drugs and money to Salas-Leyva and were also given money to take back to Mexico. The money ranged in amounts from $180,000 to $260,000. It was not implausible to find that Salas-Leyva occupied a leadership role in the money laundering, and the district court's sentence enhancement was not a clear or obvious error. Because there was no error in applying the leadership role enhancement, there is no merit in Salas-Leyva's argument that he should have received a safety valve reduction. *See* U.S.S.G. § 5C1.2(a)(4).

Finally, Salas-Leyva argues that the district court should have granted his request, made during the sentencing hearing, for a continuance so that he could call his brothers as witnesses to rebut Gutierrez's testimony that Salas-Leyva exercised control over them in directing the delivery of cocaine. In denying the continuance, the district court noted that Salas-Leyva knew about the probation department's position when the PSR was distributed several months before the sentencing hearing but he did not subpoena the witnesses. Moreover, as noted by the Government, the district court's leadership role enhancement for the drug offense was based on the testimony of other witnesses, in addition to Gutierrez. Salas-Leyva fails to show that the district court's denial of the continuance was arbitrary or unreasonable or that he suffered serious prejudice. *See United States v. Barnett*, 197 F.3d 138, 144 (5th Cir. 1999); *United States v. Peden*, 891 F.2d 514, 519-20 (5th Cir. 1989).

V.

For the foregoing reasons, the convictions and sentences of Ramirez and Salas-Leyva are AFFIRMED. The conviction of Cabrera for the drug conspiracy is AFFIRMED, but Cabrera's conviction for the money laundering conspiracy is REVERSED and the case is REMANDED for resentencing.