# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-41641

United States Court of Appeals
Fifth Circuit

**FILED**
April 25, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

RODERRETE DEWRAYNE MCCLURE,

Defendant - Appellant

Appeals from the United States District Court
for the Eastern District of Texas

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Roderrete Dewrayne McClure appeals the denial of his motion to dismiss his indictment for narcotics trafficking, contending that prosecution of the charges is barred by the terms of a 2012 plea agreement (the "2012 Plea Agreement" or "Plea Agreement") he entered into with the Government. Pursuant to that agreement, McClure pled guilty to a violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm. Information leading to that charge was obtained during the course of the Government's investigation of McClure for public corruption and narcotics trafficking, which eventually gave rise to the charges in the challenged indictment. We agree with the district court that the instant charges are based on a separate and distinct course of

`Case No. 15-41641

conduct from the § 922(g)(1) offense to which McClure pleaded guilty. Therefore, we AFFIRM.

## I.     BACKGROUND

A. Federal Investigation of Public Corruption and Drug Trafficking Conspiracy

Between August 2009 and August 2010, McClure conspired with then City Marshal of Tenaha, Texas, Fred Walker, to steal drugs on several occasions from the evidence room of the Tenaha Marshal's Office in order to distribute them for sale. Dallas area resident Tracy Fortman later joined the conspiracy.[1] Concerned about detection, McClure and Walker staged a burglary of the evidence room in August 2010, planting evidence to make it appear that members of a Mexican drug cartel had committed the burglary. They stole drugs and guns, but dumped the guns in a creek outside of Tenaha. Walker then notified an investigator with the Shelby County District Attorney's Office about the burglary. Further investigation led authorities to suspect the burglary was staged.

The FBI became involved after Walker in November 2010 forwarded to FBI Special Agent Stewart Fillmore two identical extortion letters he and McClure received at their respective residences. The letters were signed by "Jack Frost," who purported to be a DEA agent and threatened to expose the theft and drug trafficking conspiracy unless Walker and McClure each gave him $70,000. Agent Fillmore began investigating and by the summer of 2011 concluded that the letters had been written by Tracy Fortman.

---

[1] Neither Walker nor Fortman were indicted for the conspiracy.

`Case No. 15-41641

After being confronted by authorities, Fortman admitted that he wrote the letters because he needed the money due to his lack of success in moving the drugs McClure and Walker provided him. Fortman provided details about the conspiracy and the staged burglary. In addition, he showed Agent Fillmore a photograph of a "well-stocked" gun cabinet in McClure's home. By that time, Agent Fillmore knew that McClure was a convicted felon.

Shortly before interviewing Fortman, Agent Fillmore also interviewed McClure about the alleged burglary of the Tenaha City Marshal's office. During that interview, McClure, who ran a computer business in Tenaha, volunteered that, at Walker's request, he had installed recording equipment at the Marshal's Office and City Hall and that he kept copies of secret recordings on computers and hard drives in his home.

Based on this information, agents obtained a search warrant for McClure's home on August 15, 2011. During execution of the warrant, agents seized several computers and other electronic devices, as well as 13 firearms, a body armor vest, and more than 1,000 rounds of ammunition. Upon questioning, McClure admitted his involvement with the narcotics trafficking scheme, including the staged burglary to cover up the theft of the drugs.

B. The § 922(g) Case ("the Lufkin Gun Case")

Two days later, on August 17, 2011, the United States Attorney's Office for the Eastern District of Texas, Lufkin Division, obtained an indictment against McClure charging a violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm. While the case was proceeding to trial, the Government filed a notice of intent to offer Rule 404(b) evidence of the guns stolen from the Tenaha Marshal's Office, which McClure had admitted he and Walker disposed of in a creek outside Tenaha. At a hearing, the district court

`Case No. 15-41641

excluded the evidence on Rule 403 grounds, finding that it concerned "this other crime which is still under investigation" and was merely "peripheral" to the § 922(g) charge; thus the evidence was substantially more prejudicial than probative.

Shortly thereafter, on February 14, 2012, McClure pleaded guilty to a single count of being a felon in possession of a firearm. In pertinent part, the 2012 Plea Agreement provided:

> 8. GOVERNMENT'S AGREEMENT: The United States Attorney for the Eastern District of Texas agrees not to prosecute the defendant for any additional non-tax-related charges based upon the conduct underlying and related to the defendant's plea of guilty.

In conjunction with the agreement, McClure signed a factual resume describing his possession of 13 guns found in his home and his prior felony conviction.

At the plea hearing, the court informed McClure that the agreement "is taking care of federal charges against you here in the Eastern District of Texas." The court asked McClure whether there was "any other agreement or promise from the [G]overnment that's not set out in this plea agreement." McClure responded, "No, sir."

McClure was sentenced to imprisonment for 36 months and one day, which was a downward departure from the guidelines range.

C. The Narcotics Trafficking Conspiracy Case ("the Tenaha Case")

Following resolution of the Lufkin Gun Case, the Government continued its investigation of the public corruption and narcotics trafficking conspiracy. In September 2012, the investigation was transferred from the Lufkin to the Tyler Division. On August 28, 2013, a federal grand jury for the Eastern

`Case No. 15-41641

District of Texas, Tyler Division, returned a five-count indictment against McClure, charging two counts of drug conspiracy; possession with intent to distribute and distribution of marijuana, cocaine, and prescription drugs; use, carrying, and possession of a firearm during and in furtherance of a drug trafficking crime; and possession of a firearm by a convicted felon. The firearms at issue in the last two counts of the indictment were not the same weapons that formed the basis of McClure's 2012 Plea Agreement in the Lufkin Gun Case.

McClure moved to dismiss the indictment on the grounds that the Government's prosecution of the new charges breached the 2012 Plea Agreement. The district court conducted an extensive motion hearing, at which it heard testimony from numerous witnesses, including the prosecutor and defense counsel in the Lufkin Gun Case and federal agents involved in the narcotics trafficking investigation.

At the hearing, defense counsel in the Lufkin Gun Case, Lori Mack, testified that it was her understanding during plea negotiations that the plea agreement would preclude any charges related to the Tenaha narcotics investigation and that she advised McClure accordingly. When pressed for details regarding communications with the Government that led to her belief, however, she could not recall any specific conversation in which the Assistant U.S. Attorney ("AUSA"), Lisa Flournoy, indicated that the plea agreement would dispose of drug trafficking allegations still under investigation.

Flournoy, by contrast, testified that she never suggested to Mack or anyone else that McClure's pleading guilty in the Lufkin Gun Case would dispose of possible future charges related to the ongoing narcotics investigation. Mack also never asked whether the plea agreement would cover

such charges.   Flournoy further testified that Mack never received any discovery pertaining to the narcotics investigation, other than evidence related to the guns stolen from the Marshal's Office, which were the subject of the Government's Rule 404(b) notice (and the basis of the gun charges in the instant indictment).

After the district court denied McClure's motion to dismiss, the Government filed a superseding one-count information charging McClure with conspiracy to possess with intent to distribute over 50 kilograms of marijuana and aiding and abetting.   On March 6, 2015, McClure pleaded guilty to the superseding information and was sentenced to 56 months of imprisonment, followed by three years of supervised release.   The plea agreement reserved McClure's right to appeal the denial of his motion to dismiss.   He timely noticed an appeal.

## II.     DISCUSSION

### A. Standard of Review

"This court reviews a claim of breach of a plea agreement de novo, accepting the district court's factual findings unless clearly erroneous." *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008) (quoting *United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007)) (internal quotations omitted).

### B. No Breach of 2012 Plea Agreement

"If a defendant pleads guilty as part of a plea agreement, the Government must strictly adhere to the terms and conditions of its promises in the agreement." *Elashyi*, 554 F.3d at 501 (quoting *United States v. Munoz*, 408 F.3d 222, 226 (5th Cir. 2005)) (internal quotations omitted). "Furthermore, when a guilty plea 'rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or

`Case No. 15-41641

consideration, such promise must be fulfilled.'" *United States v. Valencia*, 985 F.2d 758, 761 (5th Cir. 1993) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). The defendant bears the burden of proving by a preponderance of the evidence that the Government breached a plea agreement. *Lewis*, 476 F.3d at 387. To assess a claim of breach, "this court considers whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *Elashyi*, 554 F.3d at 501 (internal quotations and citation omitted). "We apply general principles of contract law in order to interpret the terms of the plea agreement." *Lewis*, 476 F.3d at 387. "Thus, when a [plea] contract is unambiguous, this court generally will not look beyond the four corners of the document." *United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013).

In the 2012 Plea Agreement, the Government agreed not to bring any additional charges "based upon the conduct underlying and related to the defendant's plea of guilty." The district court determined that this language was unambiguous and could be interpreted according to its plain meaning. It then resorted to *Webster's* dictionary to construe the meaning of the two operative terms, defining *underlying* in relevant part as "to be at the basis of" and *related to* as "to bring into logical or natural association."[2] The court also observed that the two terms were joined together by a conjunction, although it

---

[2] *See Webster's II New Riverside University Dictionary* 992, 1257 (1994). In *United States v. Bevill*, 611 F. App'x 180 (5th Cir. 2015) (unpublished), we also turned to the dictionary, there the Oxford English Dictionary ("OED"), to define these terms in similar fashion. *See id.* at 183 n.5 (noting OED defines *underlying* in part as "[l]ying under or beneath" and *related to* in part as "connected or having relation to something else"); *see also* OED Online, Oxford University Press 2017, http://www.oed.com/view/Entry/211817 and http://www.oed.com/view/Entry/161808#eid25955656 (last visited March 30, 2017).

`Case No. 15-41641

noted that its conclusion that McClure did not meet his burden of proving a breach of the plea agreement would be the same if the terms were joined disjunctively.

Accordingly, the district court concluded that, reasonably construed,

> [T]he Government agreed not to bring a very specific kind of charge against the Defendant . . . one that is based not only on conduct that forms the basis of (underlying) the Defendant's plea of guilty to possessing firearms found in his home, but also is logically or naturally associated with (related to) Defendant's plea of guilty to possessing the firearms found in his home.

Applying this meaning to the facts, the district court found that the two cases involved separate and distinct courses of conduct. In the Lufkin Gun Case, the factual basis of McClure's plea of guilty was his possession of the 13 guns found in his home while he had a prior felony conviction. On the other hand, the Tenaha Case indictment charged that McClure engaged in a conspiracy to distribute drugs stolen from the Tenaha Marshal's Office and that McClure possessed firearms stolen from the Marshal's Office while trafficking drugs and while being a convicted felon. Further, all the alleged conduct in the Tenaha Case occurred from August 2009 to the end of 2010, months before the Government discovered the relevant conduct in the Lufkin Gun Case, on August 15, 2011. Therefore, the course of conduct underlying the charges in the Tenaha Case occurred at a different place and time than the conduct in the Lufkin Gun Case; it implicated different statutory violations; the firearms involved were unrelated to those found in McClure's home; and Walker, an unindicted co-conspirator in the drug trafficking conspiracy, "is not, nor could he be, a co-conspirator in the Lufkin Gun Case." Thus, the district court concluded that the charges in the Tenaha Case indictment were neither "underlying" nor "related to" the conduct to which McClure pleaded guilty

`Case No. 15-41641

through the 2012 Plea Agreement.  Consequently, they were not barred by that Agreement.

We agree with the district court's reasoning and its conclusion.  In other cases where the Government has brought additional charges against a defendant based on conduct that was both temporally and geographically distinct and involved different statutory violations and co-conspirators, we have found no breach of the plea agreement.  *See United States v. Wittie*, 25 F.3d 250, 263 (5th Cir. 1994) (no breach of plea agreement where "two distinct conspiracies were involved: they were separated by time; they involved different co-conspirators; they involved different statutory offenses; they included different overt acts in each offense charged; and they occurred in different geographical locations"), *aff'd on other grounds sub nom. Witte v. United States*, 515 U.S. 389 (1995); *Lewis*, 476 F.3d at 388 (no breach of plea agreement in serial prosecution for drug trafficking where new indictment pertained to larger drug trafficking conspiracy involving different co-conspirators and acts committed over much broader time span).

Two recent cases examining plea agreements with similar language further support this conclusion.  In *United States v. Ramirez*, 555 F. App'x 315 (5th Cir. 2014) (unpublished), the Government agreed not to prosecute a defendant for other charges "based on conduct underlying" his guilty plea to conspiracy to distribute methamphetamine.  *Id.* at 318.  When the defendant was later prosecuted for a larger drug and money laundering conspiracy involving cocaine, he claimed the Government breached the agreement.  *Id.* We determined there was no breach because the two conspiracies were distinct. *Id.* "Given the different time frames, co-defendants, controlled substances, and general locations of the two offenses, it would not be reasonable for [the

9

`Case No. 15-41641

defendant] to believe that his plea agreement in the methamphetamine case barred his prosecution for the instant cocaine offense." *Id.* Then in *United States v. Bevill*, 611 F. App'x 180 (5th Cir. 2015) (unpublished), we interpreted language in a plea agreement identical to the pertinent language here. The defendant had pleaded guilty to securities fraud in exchange for the Government's promise not to bring any additional charges against him "based upon the conduct underlying and related to [his] plea of guilty." *Id.* at 180–81 (internal quotation marks omitted). When the Government subsequently charged him with wire fraud, securities fraud, and money laundering for conduct occurring while he was on supervised release from his earlier conviction, the defendant argued that the Government had breached the plea agreement because the two cases involved the same type of fraudulent scheme and much of the conduct underlying the new indictment had taken place before his guilty plea in the previous case. *Id.* at 182. We rejected this argument, determining that the conduct at issue in the two cases occurred at different times and involved different fraudulent entities and victims. *Id.* at 182–83. Thus, it was not reasonable for the defendant to interpret the Government's earlier agreement as prohibiting a prosecution based on this separate and unrelated conduct. *Id.* at 183.

McClure does not deny that the two prosecutions involve different courses of conduct. Moreover, he concedes that the 2012 Plea Agreement is unambiguous on its face and, consequently, we generally would not look beyond the four corners of the document. *See Long*, 722 F.3d at 262. Nonetheless, he urges us to "take a more expansive view of the record" because, in his view, the circumstances surrounding the Plea Agreement render its scope ambiguous, such that he reasonably believed pleading guilty to the §

10

`Case No. 15-41641

922(g)(1) charge in the Lufkin Gun Case would foreclose future prosecution for his involvement in the Tenaha drug trafficking conspiracy. We are not persuaded.

First, McClure argues that because the two cases arose from the same Government investigation, they are "inextricably intertwined."[3] This argument misses the point. The focus of the Government's promise not to bring any additional charges is on the *conduct* "underlying and related to" McClure's guilty plea, not on the Government's investigation of that conduct. Because the charges in the Tenaha Case were based on a separate and distinct course of conduct from McClure's guilty plea in the Lufkin Gun Case, those charges were not barred by the terms of the Plea Agreement.

Second, McClure contends that his case is akin to *United States v. Elashyi*, where we determined that the Government had breached a defendant's plea agreement resolving charges of export violations arising from his computer-export business by subsequently prosecuting him for similar charges arising from his involvement in a separate export business. 554 F.3d at 501–02. But the language of the plea agreement in *Elashyi* was broader than the Plea Agreement here. In *Elashyi*, the Government agreed not to "seek, prefer or prosecute any further criminal charges against [the defendant]

---

[3] McClure points out that both cases were investigated under the same agency case number; investigators recommended that the cases be prosecuted together; the Government at one point expressed concern that the relatedness of the two cases would cause a possible conflict for the defense attorneys involved; the majority of the evidence at issue in both cases came about as a result of the same search warrant; the Government sought to introduce evidence relating to the offenses charged in the Tenaha Case at his trial in the Lufkin Gun Case; and the charges in the Tenaha Case indictment parrots language in the 2011 search warrant that led to the discovery of the firearms in McClure's home.

`Case No. 15-41641

arising out of the facts and circumstances known by the government at this time surrounding [the defendant's] involvement in the crimes addressed in the . . . indictment." *Id.* at 501. As we noted there, the phrase "arising out of" has typically been given a "very broad interpretation." *Id.* Furthermore, in *Elashyi*, the later prosecution arose out of facts that were not only known to the Government at the time of the plea offer, but also were an integral part of the background to the preceding indictment. *Id.* at 501–02. Indeed, those facts were alleged and incorporated by reference in connection with every count in the preceding indictment. *Id.* By contrast, the indictment in the Lufkin Gun Case never mentions the drug trafficking conspiracy. McClure seizes on the fact that here, as in *Elashyi*, the Government knew of the facts and circumstances that formed the basis of the Tenaha Case indictment at the time of the plea offer. But in *Elashyi*, the Government's knowledge was significant because the language in the plea agreement made it so. It expressly precluded "further criminal charges . . . arising out of *the facts and circumstances known by the government at this time* surrounding [the defendant's] involvement in the crimes addressed in the . . . indictment." *Id.* at 501 (emphasis added). McClure's plea agreement contains no such language and the Government's decision to wait to bring the instant charges until it completed its investigation is not otherwise a violation of the 2012 Plea Agreement.

Third, McClure asserts that his subjective belief that he would avoid prosecution for his involvement in the drug trafficking conspiracy is reasonable because his attorney, Lori Mack, believed the same and advised him accordingly. The district court discredited Mack's testimony because she lacked a concrete basis for her subjective impression that the plea would absolve McClure from any liability related to the ongoing Tenaha

12

`Case No. 15-41641

investigation.  Mack could not recall any communication from AUSA Flournoy that led to her belief.  Flournoy, on the other hand, testified that she never made any such promise.  Nor did Mack ever ask whether the plea would conclude the Tenaha investigation as it pertained to McClure.  In fact, everyone, including the Lufkin court, seemed to be operating under the understanding that the investigation would continue after the plea.[4]  Given the gravity of the allegations under investigation, it would be unreasonable to assume that the Government would decline to pursue future charges against McClure unless it expressly stated such an intention.  Moreover, the Government sought no term of sentence beyond the guidelines range for the felon-in-possession offense and McClure, in fact, received a sentence below the guidelines range.  These circumstances make it even less plausible that the 2012 Plea Agreement was meant to cover the narcotics conspiracy, charges of which were not yet pending at the time of the plea offer.

A defense counsel's subjective belief that a defendant's plea will preclude future prosecution related to an ongoing investigation, even if the defendant relied upon it, does not, without more, immunize him from prosecution.  *See United States v. Williams*, 809 F.2d 1072, 1079–80 (5th Cir. 1987) (although defense counsel believed clients' plea agreement with Western District of Texas would preclude indictment related to ongoing investigation in Southern

---

[4] For example, although McClure makes much of the Government's Rule 404((b) notice of its intent to introduce evidence of the guns stolen from the Tenaha Marshal's Office at his trial in the Lufkin Gun Case, the Lufkin court excluded the evidence of "this other crime which is still under investigation."  Other than that evidence, Flournoy testified that she never provided Mack with any discovery pertaining to the drug trafficking conspiracy, which made it difficult for the district court "to ascertain how [Mack] determined that two courses of conduct are related enough to be covered by the plea agreement in the Lufkin Gun Case."

`Case No. 15-41641

District of Texas and advised clients accordingly, government's evidence supported trial court's finding of no promise not to prosecute in Southern District), *reh'g granted to different defendant*, 828 F.2d 1 (5th Cir. 1987).

Finally, McClure contends that the Government's conduct in the Lufkin Gun Case implied that it would not prosecute him for charges related to the drug trafficking conspiracy. The district court did not find any support in the record for any promise other than those contained in the 2012 Plea Agreement. McClure nonetheless suggests that the Government should have informed him at the time of the plea offer that it intended to bring charges related to the Tenaha investigation and that its silence amounted to trickery intended to induce him to plead guilty.

It is true that "when a guilty plea 'rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Valencia*, 985 F.2d at 761 (quoting *Santobello*, 404 U.S. at 262). But the defendant bears the burden of proving that the Government made such a promise, and omissions, without more, rarely suffice. *See, e.g.*, *United States v. Pihakis*, 545 F.2d 973, 975 (5th Cir. 1977) (prosecutor's failure to inform defendant of potential prosecution in another district did not constitute implied promise not to prosecute those charges); *Feliciano v. United States*, 914 F. Supp. 776, 779 (D.P.R. 1996) (Government's knowledge of offenses charged in second indictment when it filed first indictment and failure to inform defendant of future prosecution did not constitute implied promise absent evidence of any actual promise not to prosecute), *aff'd sub nom. Rivera-Feliciano v. United States*, 107 F.3d 1 (1st Cir. 1997).

14

`Case No. 15-41641

During the plea hearing in the Lufkin Gun Case, the court asked McClure whether there was any other agreement or promise from the Government that was not set out in the Plea Agreement itself. McClure responded that there was not. We have previously held a defendant to his statements at the plea hearing where he indicated there was no promise outside of the written agreement. *See United States v. Kirk*, 70 F.3d 791, 794 (5th Cir. 1995) (affirming district court's finding that Government made no implied promise not to prosecute based in part on defendant's statement at plea hearing that no one had made any promise other than plea agreement that induced him to plead guilty), *reh'g granted on other grounds and aff'd by an equally divided court*, 105 F.3d 997 (5th Cir. 1997). We similarly see no reason here not to hold McClure at his word.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.