# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 24-10113

———————————

United States of America,

United States Court of Appeals
Fifth Circuit

**FILED**

April 21, 2025

Lyle W. Cayce
Clerk

*Plaintiff—Appellee*,

*versus*

Elijah Muhammad,

*Defendant—Appellant*,

consolidated with

———————————

No. 24-10116

———————————

United States of America,

*Plaintiff—Appellee*,

*versus*

Kareem Muhammad,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC Nos. 3:23-CR-450-1,
3:23-CR-450-2

_____

Before JONES and OLDHAM, *Circuit Judges*, and HENDRIX, *District Judge*.[*]

JAMES WESLEY HENDRIX, *District Judge*:

After pleading guilty to unlawful possession of fentanyl and ammunition, twin brothers Elijah and Kareem Muhammad were convicted of sex-trafficking charges stemming from a separate case. The brothers argue that their plea agreements in the fentanyl and ammunition cases—in which the government promised not to bring additional charges "based upon the conduct underlying and related to the defendant's plea of guilty"—bar their prosecution in the sex-trafficking case. The district court disagreed, denying their motions to dismiss the sex-trafficking case. The brothers appeal, contending that the district court clearly erred when it found that the brothers' sex-trafficking conduct was temporally, geographically, and statutorily distinct from their drug-possession and ammunition-possession pleas. But their arguments underestimate the significant differences between the earlier and later prosecutions, and they ignore the plea agreements' plain language. We AFFIRM.

I.

A.

In 2018, detectives with the Fort Worth Police Department (FWPD) human-trafficking unit began investigating Elijah and Kareem Muhammad

_____

[*] United States District Judge of the Northern District of Texas, sitting by designation.

for sex trafficking.  FWPD arrested Elijah in November 2019 when he brought two victims to a commercial-sex transaction with an undercover officer in Fort Worth, Texas.  In April 2023, law enforcement also arrested Kareem on sex-trafficking charges in Tyler, Texas.

The sex-trafficking investigation uncovered conduct dating back to 2011 and involving approximately ten identified victims, several of whom were minors.  The sex-trafficking conduct occurred in locations such as Dallas-Fort Worth, East Texas, Austin, Houston, California, and Nevada.  Investigators also linked Elijah's phone number to "at least 25 commercial sex ads in California and Texas, as well as Fort Worth" and to four related phone numbers, which were themselves "connected to approximately 153 commercial sex ads online in 16 locations and 3 states."  By the summer of 2023, multiple local law-enforcement agencies and Homeland Security Investigations (HSI) were investigating the brothers for sex trafficking.

In June 2023, FWPD detectives in the human-trafficking unit knew that Elijah and Kareem frequented a Days Inn hotel in Fort Worth, so they requested to install a pole camera to surveil it.  The request set in motion a deconfliction process where they learned of a separate drug-trafficking investigation into the brothers.  The FWPD narcotics unit and the Drug Enforcement Administration (DEA) were conducting the simultaneous narcotics investigation.  This investigation began much later—in early 2023—and focused on fentanyl trafficking at the same Days Inn hotel.  After the deconfliction process, the human-trafficking investigators and drug-trafficking investigators shared information, and they worked together to some extent.

Soon after, narcotics detectives made a controlled purchase of fentanyl from Elijah at his home in Tarrant County, Texas.  The next day, detectives arrested Elijah on an outstanding warrant as he left his house.  Detectives conducted a separate traffic stop on Kareem, found loose 9mm

ammunition in his pocket, and arrested him for unlawful possession of ammunition by a felon. Detectives then executed a search warrant at Elijah's house and found 82 grams of fentanyl, a pistol, and cash.

## B.

A grand jury indicted the Muhammad brothers in the Fort Worth Division of the Northern District of Texas for conspiracy to possess with intent to distribute a controlled substance. Two months later, Elijah pled guilty to possession with intent to distribute fentanyl, and Kareem pled guilty to unlawful possession of ammunition by a felon.

Both brothers signed plea agreements—identical in all relevant respects—that contained a governmental promise not to bring certain additional charges. Specifically, the parties agreed that "[t]he government will not bring any additional charges against the defendant based upon the conduct underlying and related to the defendant's plea of guilty."

Soon after the brothers' guilty pleas, an HSI agent presented a separate criminal complaint against Elijah, Kareem, and three additional coconspirators for conspiracy to engage in sex trafficking through force, fraud, and coercion—this time in the Dallas Division of the Northern District of Texas. A separate grand jury returned a superseding indictment against all five defendants—and later a sixth—on several additional sex-trafficking charges. Although the case was initially assigned to a judge in the Dallas Division, this case was later reassigned to the judge in the Fort Worth Division who was presiding over the brothers' earlier cases.

Meanwhile, the drug-trafficking cases proceeded to sentencing. The district court sentenced Kareem to 24 months' imprisonment and Elijah to 84 months' imprisonment—both below-the-guidelines sentences as a result of plea agreements under Federal Rule of Criminal Procedure 11(c)(1)(C).

Later on the same day that the court sentenced Elijah in the drug case, Elijah moved to dismiss the sex-trafficking case, claiming for the first time

that the government breached the plea agreement in the drug-trafficking case by prosecuting him in the sex-trafficking case. Kareem filed an identical motion the next day. The district court decided to carry the motions with trial in anticipation of hearing additional evidence.

Shortly before trial, the parties submitted a Rule 11(c)(1)(C) agreement for 120 months' imprisonment, preserving the brothers' ability to appeal from a denial of the motions to dismiss. The district court accepted that agreement. Elijah and Kareem entered guilty pleas and agreed to proceed to sentencing immediately.

Before imposing the sentences, the court denied the brothers' motions to dismiss. The district court found that the sex-trafficking conduct "is the greater crime" and is "temporally different than the companion Fort Worth Division case" because it "spans a decade or more." The court noted that the guilty pleas in the drug-related cases were for crimes related to "one instance." The court also found that "the geographic differences are distinct" because the sex-trafficking conduct "involved multiple states, multiple districts, multiple divisions." The court highlighted that, in contrast, the guilty pleas in the drug-related cases were for crimes committed in "the one instance, in the one place here, in the Fort Worth Division." Finally, the court found that "[t]he statutory violations are clearly different." The district court sentenced the brothers to 120 months' imprisonment to be served consecutively to their sentences in the drug-trafficking cases.

## II.

The defendant bears the burden of proving by a preponderance of the evidence that the government breached a plea agreement. *United States v. McClure*, 854 F.3d 789, 793 (5th Cir. 2017). In determining whether a breach occurred, we consider "whether the government's conduct is consistent with the defendant's reasonable understanding of the agreement." *Id.* (quoting *United States v. Elashyi*, 554 F.3d 480, 501 (5th Cir. 2008)).

We review a claim of breach of a plea agreement *de novo*, but we accept the district court's factual findings as correct unless clearly erroneous. *Id.* at 792. Whether certain criminal conduct is temporally and geographically distinct from other conduct is a question of fact. *See id.* at 793–94. We will not set aside the district court's factual findings unless we are left with the definite and firm conviction that a mistake has been committed. *Appliance Liquidation Outlet, LLC v. Axis Supply Corp.*, 105 F.4th 362, 374 (5th Cir. 2024). Moreover, to be clearly erroneous, the district court's factual findings must be implausible in light of the record as a whole. *United States v. Shah*, 95 F.4th 328, 368 (5th Cir. 2024).

## III.

## A.

We apply general principles of contract law to interpret the terms of a plea agreement. *McClure*, 854 F.3d at 793; *see also United States v. Perry*, 35 F.4th 293, 348 (5th Cir. 2022). When the plea agreement is unambiguous, we generally do not look beyond the four corners of the contract. *McClure*, 854 F.3d at 793. Thus, we first look to the plea agreements' plain language. *See United States v. Long*, 722 F.3d 257, 262 (5th Cir. 2013).

Here, the government's contractual promise not to bring additional charges against Elijah and Kareem was limited to charges "based upon the conduct underlying and related to the defendant[s'] plea[s] of guilty" to the drug-related offenses. The parties agree that this language is unambiguous, and we agree. Thus, we confine our analysis to the operative language of the government's contractual promise.

Ignoring these standards, the brothers rely heavily on the overlapping nature of the sex-trafficking and drug-trafficking investigations. But because the government's promise focuses "on the *conduct* underlying and related to [the brothers'] guilty plea, not on the government's investigation of that conduct," the brothers' argument that the investigations were inextricably

6

intertwined "misses the point." *McClure*, 854 F.3d at 795 (cleaned up) (emphasis in original). We reject this argument and find the brothers' reliance on cases with materially different plea-agreement language—such as *United States v. Thomas*, 58 F.4th 964 (8th Cir. 2023)—to be unpersuasive.

Contrary to the brothers' argument, we must focus on the plea agreements' language to determine whether a breach occurred, and we have analyzed identical language before. In *United States v. McClure*, we interpreted identical plea-agreement language and held that there was no breach "where the Government has brought additional charges against a defendant based on conduct that was both temporally and geographically distinct and involved different statutory violations and coconspirators." 854 F.3d at 794.[1] There, McClure conspired with a city marshal to steal drugs from an evidence room and sell them. *Id.* at 790. Fearing detection, McClure and the marshal staged a burglary of drugs and guns from the evidence room. *Id.* During the investigation, law enforcement learned that McClure (a convicted felon) had different guns inside his home and arrested him for that offense. *Id.* at 791. McClure pled guilty to a felon-in-possession charge in the Lufkin Division of the Eastern District of Texas. *Id.* His plea agreement contained the same operative language as the brothers' agreements here. *Id.* The government later charged McClure with drug trafficking in the Tyler Division of the Eastern District of Texas. *Id.* at 792. McClure moved to dismiss the new charges, arguing that the government breached the first plea agreement because the cases were "inextricably intertwined." *Id.* at 795. The district court denied the motion, finding that the conduct underlying the

---

[1] The parties treat temporal, geographic, and statutory similarity as three distinct "*McClure* factors" to be weighed and balanced against each other when determining whether a breach occurred. To be clear, we resolve this case, as in *McClure*, by analyzing the plea agreement's plain language, the record, and relevant precedent—not through the application of a balancing test.

two cases occurred at different times and places and involved different statutory violations. *Id.* at 794. We agreed with the district court's reasoning and affirmed. *Id.*

We have also addressed this issue in other cases involving nearly identical plea-agreement language.[2] In *United States v. Ramirez*, 555 F. App'x 315 (5th Cir. 2014), we upheld a conviction for a cocaine-distribution conspiracy occurring from 2006 to 2011 despite a prior plea agreement for a smaller methamphetamine-distribution conspiracy occurring from 2007 to 2009. 555 F. App'x at 318. Even though the statutory violations were similar and overlapped in time, we held that "[g]iven the different time frames, co-defendants, controlled substances, and general locations of the two offenses, it would not be reasonable for [the defendant] to believe that his plea agreement in the methamphetamine case barred his prosecution for the instant cocaine offense." *Id.* Likewise, in *United States v. Bevill*, 611 F. App'x 180 (5th Cir. 2015), we rejected the argument that the government was precluded from charging a fraud defendant a second time for using different means to defraud different investors in a similar manner as the original offense to which he pled guilty. 611 F. App'x at 182–83.

Here, the brothers concede that the cases involve different statutory violations. We agree. And the record fully supports the district court's factual findings that the sex-trafficking conduct was temporally and geographically distinct from the drug-trafficking conduct. The sex-trafficking conduct began in 2011, involved multiple victims, and took place in several locations in Texas, California, and Nevada. Additionally, the brothers' sex-trafficking indictment included three additional coconspirators

---

[2] Although these two decisions are unpublished and therefore non-precedential, we cite them to show consistency among our rulings. *See* 5th Cir. R. 47.5.4.

who were not indicted in the drug-trafficking conspiracy. *See McClure*, 854 F.3d at 794.

In contrast, the indicted drug conduct did not begin until early 2023. And the drug investigation ended with the brothers' arrests just a few months later. Moreover, Elijah and Kareem pled guilty to possession of fentanyl and ammunition on one particular day, in one particular location. They did not plead guilty to conspiracy or distribution charges. Given the significant temporal and geographic distinctions between the brothers' wide-ranging sex-trafficking conduct and the isolated drug-related conduct to which they pled guilty, the additional coconspirators, and the distinct statutory violations, we hold that the sex-trafficking conduct was not "underlying and related to" the defendants' guilty pleas. Therefore, the government did not breach the plea agreements.

We have reached the same result under less compelling circumstances. In *McClure*, *Ramirez*, and *Bevill*, we affirmed the absence of breach because the defendants' conduct was sufficiently distinct in time, place, and substance. And we did so even though the pairs of statutory violations in *Ramirez* and *Bevill* were nearly identical, the crimes in *McClure* and *Ramirez* occurred in the same geographical areas, and the timeframes for the criminal conduct in all three cases were between only three and six years. *See McClure*, 854 F.3d at 790–94; *Ramirez*, 555 F. App'x at 318; *Bevill*, 611 F. App'x at 180–83. Because we have affirmed the absence of breach in cases presenting closer questions—involving greater overlaps in time, location, and the nature of the offenses—we do so again here.

In sum, there is no evidence in the record to suggest that the district court's factual findings were clearly erroneous. The known drug-trafficking conduct was confined to early 2023 and a few locations within Tarrant County, Texas. The sex-trafficking conduct spanned at least 12 years and three different states, and it involved different coconspirators than the

drug-trafficking conspiracy. Thus, the sex-trafficking case was not "based upon the conduct underlying and related to" the fentanyl and ammunition pleas. No breach occurred, and we AFFIRM.

### B.

Although we confine our inquiry to the four corners of the plea agreements, the result would be the same even if we were to look beyond them. The record demonstrates that all parties involved understood the agreements to not include the sex-trafficking conduct. Neither Elijah's nor Kareem's presentence investigation reports included any information pertaining to the sex-trafficking allegations as part of their relevant conduct. The sex-trafficking conduct did not factor into either Elijah's or Kareem's sentences, both of which were below the guideline ranges. And the brothers state in their briefs that it was understood that the sex-trafficking charges would be brought in the Eastern District of Texas after the drug charges were brought in the Northern District. Like *McClure*, "everyone . . . seemed to be operating under the understanding that the investigation would continue after the plea." *McClure*, 854 F.3d at 796.

Additionally, as we explained in *McClure*, "given the gravity of the allegations under investigation, it would be unreasonable to assume that the government would decline to pursue future charges against [the brothers] unless it expressly stated such an intention." *Id.* at 796 (cleaned up). Moreover—as in *McClure*—"the government sought no term of sentence beyond the guidelines range for the [fentanyl and ammunition] offenses and [each brother], in fact, received a sentence below the guidelines range." *Id.* (cleaned up). And, of course, the brothers made no claims of breach when the sex-trafficking cases were indicted or during the initial lead-up to trial. The record shows that the brothers expected the sex-trafficking charges to be brought later, just in a different district. Their later attempt to exploit this perceived "misstep" by the government is an effort to secure windfall

dismissals; it is no indication of a genuine misunderstanding of their plea agreements.

\*    \*    \*

In light of the record as a whole, we are not left with a definite and firm conviction that a mistake has been committed in the district court's findings. *See Appliance Liquidation Outlet,* 105 F.4th at 374; *Shah*, 95 F.4th at 368. On the contrary, the record amply supports those findings. The brothers' sex-trafficking conduct was temporally, geographically, and statutorily distinct from their fentanyl-possession and ammunition-possession pleas, and it involved additional coconspirators. Therefore, the sex-trafficking conduct did not underlie and relate to the initial guilty pleas, and the government did not breach the plea agreements. The judgment of the district court is AFFIRMED.